**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| JANE DOE, ALIAS<br><br>*Plaintiff*,<br><br>v.<br><br>JOHN DOE 1 A/K/A CELEBJARED ANONYMOUS USER, JOHN DOE 2 A/K/A POSTINGBOT (VIP MEMBER), JOHN DOE 3 A/K/A HAROLDFINCH1965, JOHN DOE 4 A/K/A BAGCILAR ESCORT BAYAN ANONYMOUS USER, JOHN DOE 5 A/K/A ONLYFANSPREMIUM (ONLYFANS +18 LEAKS , ONLYFANS LEAKS ARCHIVE), JOHN DOE 6 A/K/A DELETED MEMBER 1343115 (BIG BALLS), JOHN DOE 7 A/K/A DAVMOC (LEAK LOVER), JOHN DOE 8 A/K/A VIP1235 (LEAK LOVER), JOHN DOE 9 A/K/A CONE000 (ACTIVE MEMBER), JOHN DOE 10 A/K/A DELETED MEMBER 1270564 (MEMBER), JOHN DOE 11 A/K/A DICK DICKSON (BIG PENIS), JOHN DOE 12 A/K/A VORRAGEN (CREEP), JOHN DOE 13 A/K/A KENNY46 (BIG PENIS), JOHN DOE 14 A/K/A GAGOKA48 (MEMBER), JOHN DOE 15 A/K/A HALKALI ESCORT BAYAN ANONYMOUS USER,  JOHN DOE 16 A/K/A JHONALPHA (BIG BALLS), JOHN DOE 17 A/K/A C3Z44 (YUR GAY), JOHN DOE 18 A/K/A RATATATTAT8623 (MEMBER), JOHN DOE 19 A/K/A BIGPASTY (I FUCK PORNSTARS), JOHN DOE 20 A/K/A OK_YOGURTCLOSET_7433 (BIG BALLS), JOHN DOE 21 A/K/A KENOBI75 (FAPLET), JOHN DOE 22 A/K/A RANDOMUSERNAME111 (FAPLET), JOHN DOE 23 A/K/A HENSOOMWBESI (ACTIVE MEMBER), JOHN DOE 24 A/K/A LAMA21 (PULL OUT KING), JOHN DOE 25 A/K/A SMKEWIED1 (BIG BALLS), JOHN DOE 26 | Civil Action No.: |

A/K/A SDVIJSDISDJODS (BIG PENIS), JOHN DOE 27 A/K/A PREMIUMLEAKS ONLY (YUR GAY), JOHN DOE 28 A/K/A PREMIUM TEEN LEAKED (YUR GAY), JOHN DOE 29 A/K/A AAAY (GANGBANGER), JOHN DOE 30 A/K/A SHARKIE (PUSSY DESTROYER), JOHN DOE 31 A/K/A LACHOWALL (YUR GAY) AND JOHN DOE 32 A/K/A IMPORN.TO ANONYMOUS USER,

*Defendants.*

# COMPLAINT

Plaintiff Jane Doe ("Plaintiff"), by and through her undersigned counsel, hereby states as follows in support of her Complaint against Defendant John Doe 1 a/k/a Celebjared anonymous user, John Doe 2 a/k/a PostingBot (VIP Member), John Doe 3 a/k/a haroldfinch1965, John Doe 4 a/k/a Bagcilar Escort Bayan anonymous user, John Doe 5 a/k/a Onlyfanspremium (ONLYFANS +18 LEAKS , ONLYFANS LEAKS ARCHIVE), John Doe 6 a/k/a Deleted member 1343115 (Big Balls), John Doe 7 a/k/a DavMoc (Leak Lover), John Doe 8 a/k/a Vip1235 (Leak Lover), John Doe 9 a/k/a Cone000 (Active Member), John Doe 10 a/k/a Deleted member 1270564 (Member), John Doe 11 a/k/a Dick Dickson (Big Penis), John Doe 12 a/k/a vorragen (Creep), John Doe 13 a/k/a Kenny46 (Big Penis), John Doe 14 a/k/a Gagoka48 (Member), John Doe 15 a/k/a Halkali Escort Bayan anonymous user, John Doe 16 a/k/a JhonAlpha (Big Balls), John Doe 17 a/k/a c3z44 (Yur Gay), John Doe 18 a/k/a ratatattat8623 (Member), John Doe 19 a/k/a BigPasty (I fuck Pornstars), John Doe 20 a/k/a Ok_Yogurtcloset_7433 (Big Balls), John Doe 21 a/k/a Kenobi75 (Faplet), John Doe 22 a/k/a RandomUsername111 (Faplet), John Doe 23 a/k/a hensooMwbesi (Active member), John Doe 24 a/k/a Lama21 (Pull Out King), John Doe 25 a/k/a smkewied1 (Big

2

Balls), John Doe 26 a/k/a Sdvijsdisdjods (Big Penis), John Doe 27 a/k/a PremiumLeaks Only (Yur Gay), John Doe 28 a/k/a Premium teen leaked (Yur Gay), John Doe 29 a/k/a Aaay (Gangbanger), John Doe 30 a/k/a Sharkie (Pussy Destroyer), John Doe 31 a/k/a Lachowall (Yur Gay) and John Doe 32 a/k/a Imporn.to anonymous user ("Defendants").

## I.  PARTIES

1. Plaintiff Jane Doe is a victim of revenge pornography whose private intimate images were stolen and, along with her personal identifying information, have been published to various websites on the Internet without her consent. Plaintiff is an individual and resident of the County of Providence and has been residing in the County of Providence at all times relevant to the actions complained of herein.

2. As a victim of revenge pornography, Plaintiff brings this lawsuit under a pseudonym to protect her anonymity pursuant to 15 U.S.C § 6851.

3. The Doe Defendants are a group of individuals who have anonymously or pseudonymously distributed and disseminated to others sexually explicit images of Plaintiff without her consent via the publicly accessible Internet websites identified herein and, upon information and belief, other online digital mediums, including private forums and messaging applications, Plaintiff has yet to discover.

4. The precise identities and place(s) of residence of the Doe Defendants is not known to Plaintiff and cannot be discovered without legal process. Plaintiff intends to utilize, with leave of court, the discovery process to identify and locate the Doe Defendants and will amend her complaint as such information is discovered.

## II.     VENUE AND JURISDICTION

5.  This Court possesses federal subject matter jurisdiction under 15 U.S.C § 6851 which creates a federal cause of action for victims of revenge pornography and non-consensual intimate image sharing.

6.  Venue is proper in United States District Court for the District of Rhode Island because the Doe Defendants purposely directed their tortious activities towards Rhode Island by targeting Plaintiff, a Rhode Island resident, targeting a Rhode Island audience, and foreseeably causing the brunt of the intended harm in Rhode Island.

## III.    FACTUAL ALLEGATIONS

7.  Plaintiff is the victim of revenge pornography which, along with her personal identifying information, has been and is being disseminated and promoted by the Doe Defendants online without her consent.

8.  The actions complained of herein are intended to and have resulted in damages to Plaintiff, including but not limited to extreme mental distress and anguish, significant injury to reputation, and ongoing mitigation expenses.

9.  The intimate images of Plaintiff disseminated by the Doe Defendants depict Plaintiff in various states of nudity and have been published on the Internet either as individual images or as part of an album of images (collectively, the "Content").

10. Plaintiff never published the Content on the Internet or otherwise shared any of the images with anyone other than a former exclusive romantic partner. Plaintiff and her ex-partner, who is also depicted in a few of the images, had a clear understanding and mutual agreement to maintain strict privacy over the images and never share any of them with others.

4

11. Plaintiff's face is clearly visible and recognizable in many of the images.

12. Some of the albums through which the Content was published have included Plaintiff's personal identifying information, including name, city of residence, phone number, and other contact information.

13. Plaintiff has been contacted directly with perverted and harassing messages by others who have located the various publications of the Content online.

14. Plaintiff has invested significant time and expense locating and attempting to cause the removal of the Content from the Internet. Plaintiff has purchased an online monitoring service to use all reasonable efforts and diligence to locate the Content on the Internet wherever it may be published. Demands for removal have been communicated via Plaintiff's legal counsel to each website on which the Content has appeared and each hosting provider (when identifiable) and accredited registrar for any of the websites which have not complied.

15. As of February 2024, as a result of significant mitigation efforts and expense, Plaintiff was unable to locate or otherwise discover the presence of the Content on the Internet.

16. However, in or around March 2024 and upon receiving messages from unknown individuals who had viewed the Content, Plaintiff was made aware of and discovered additional websites and forums on which the Content was published and displayed.

17. Since March 2024, while Plaintiff has continued her efforts to cause removal of the Content, it has been published and is currently displayed on additional web pages.

18. Upon information and belief, at least some of the Doe Defendants have saved the Content on their private hard drives or otherwise stored the Content so it can be published each time Plaintiff causes it to be removed.

19. One nude image of Plaintiff has also been utilized to create a purported escort advertisement on two Turkish websites, thereby falsely representing that Plaintiff is engaged in sex work and unlawful solicitation. Contrary to the intended and false implication, Plaintiff has never engaged in any sex work. Upon information and belief, the advertisements are used by online scammers to target and entice sextortion victims into interacting with the account under false pretenses.

20. The publication of the Content in any form causes the false implication that Plaintiff herself has freely shared her intimate images on the Internet and that false implication has caused others who have viewed the Content to contact Plaintiff for the purpose of engaging in sexual relations. Such unwanted contact, due to frequency at times following a new publication of the Content, has risen to the level of harassment and caused Plaintiff to experience emotional distress.

21. Plaintiff continues to invest significant time and considerable expense in attempting to locate and cause the removal of the Content from the various Internet websites on which it is displayed.

22. To date, as a result of the actions complained of herein, Plaintiff has incurred no less than $67,159.15 in mitigation expenses for monitoring and searching the Internet for the Content and attempting to cause removal of the Content when discovered.

23. Upon information and belief, Plaintiff shall continue to indefinitely incur expense in monitoring the Internet for additional publications of the Content and efforts to cause removal of the same to mitigate her damages, protect her privacy, and safeguard her well-being.

24. At the time of this Complaint and to the best of Plaintiff's knowledge, the Content posted by the following users on the following dates remains accessible to the public via the Internet:

   a. John Doe 1 posted Plaintiff's Content without her consent on the website celebjared.pk with a purported publication date of March 16, 2022. Plaintiff discovered John Doe 1's publication of the Content on or around October 13, 2024.

   b. John Doe 2 posted the Content without Plaintiff's consent on the website forum.fapfappy.com with a purported publication date of April 14, 2022. Plaintiff discovered John Doe 2's publication of the Content on or around June 18, 2024.

   c. John Doe 3 posted the Content without Plaintiff's consent on the website forum.fapfappy.com with a purported publication date of February 10, 2023. Plaintiff discovered John Doe 3's publication of the Content on or around September 13, 2024.

   d. John Doe 4 posted the Content without Plaintiff's consent on the website bagcilarcicek.net with a purported publication date of April 3, 2023. Plaintiff discovered John Doe 4's publication of the Content on or around October 13, 2024.

   e. John Doe 5 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of July 27, 2023. Plaintiff discovered John Doe 5's publication of the Content on or around June 18, 2024.

   f. John Doe 6 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of July 27, 2023. Plaintiff discovered John Doe 6's publication of the Content on or around June 18, 2024.

g. John Doe 7 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of July 27, 2023. Plaintiff discovered John Doe 7's publication of the Content on or around June 18, 2024.

h. John Doe 8 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of July 27, 2023. Plaintiff discovered John Doe 8's publication of the Content on or around June 18, 2024.

i. John Doe 9 posted the Content without Plaintiff's consent on the website fourm.sorrymother.to with a purported publication date of July 28, 2023. Plaintiff discovered John Doe 9's publication of the Content on or around June 18, 2024.

j. John Doe 10 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of July 28, 2023. Plaintiff discovered John Doe 10's publication of the Content on or around June 18, 2024.

k. John Doe 11 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of July 29, 2023. Plaintiff discovered John Doe 11's publication of the Content on or around June 18, 2024.

l. John Doe 12 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of July 29, 2023. Plaintiff discovered John Doe 12's publication of the Content on or around June 18, 2024.

m. John Doe 13 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of July 29, 2023. Plaintiff discovered John Doe 13's publication of the Content on or around June 18, 2024.

n. John Doe 14 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of July 29, 2023. Plaintiff discovered John Doe 14's publication of the Content on or around June 18, 2024.

o. John Doe 15 posted the Content without Plaintiff's consent on the website halkalisanat with a purported publication date of August 16, 2023. Plaintiff discovered John Doe 15's publication of the Content on or around January 13, 2025.

p. John Doe 16 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of January 27, 2024. Plaintiff discovered John Doe 16's publication of the Content on or around June 18, 2024.

q. John Doe 17 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of April 9, 2024. Plaintiff discovered John Doe 17's publication of the Content on or around June 18, 2024.

r. John Doe 18 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of April 9, 2024. Plaintiff discovered John Doe 18's publication of the Content on or around June 18, 2024.

s. John Doe 19 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of April 9, 2024. Plaintiff discovered John Doe 19's publication of the Content on or around June 18, 2024.

t. John Doe 20 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of April 9, 2024. Plaintiff discovered John Doe 20's publication of the Content on or around June 18, 2024.

u.  John Doe 21 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of April 9, 2024. Plaintiff discovered John Doe 21's publication of the Content on or around June 18, 2024.

v.  John Doe 22 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of April 9, 2024. Plaintiff discovered John Doe 22's publication of the Content on or around June 18, 2024.

w.  John Doe 23 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of April 9, 2024. Plaintiff discovered John Doe 23's publication of the Content on or around June 18, 2024.

x.  John Doe 24 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of April 10, 2024. Plaintiff discovered John Doe 24's publication of the Content on or around June 18, 2024.

y.  John Doe 25 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of April 10, 2024. Plaintiff discovered John Doe 25's publication of the Content on or around June 18, 2024.

z.  John Doe 26 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of April 10, 2024. Plaintiff discovered John Doe 26's publication of the Content on or around June 18, 2024.

aa. John Doe 27 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of February 10, 2024 and August 17, 2024. Plaintiff discovered John Doe 27's publication of the Content on or around June 18, 2024.

    bb. John Doe 28 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of June 16, 2024. Plaintiff discovered John Doe 28's publication of the Content on or around June 18, 2024.

    cc. John Doe 29 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of June 16, 2024. Plaintiff discovered John Doe 29's publication of the Content on or around June 18, 2024.

    dd. John Doe 30 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of June 16, 2024. Plaintiff discovered John Doe 30's publication of the Content on or around June 18, 2024.

    ee. John Doe 31 posted the Content without Plaintiff's consent on the website forum.sorrymother.to with a purported publication date of June 17, 2024. Plaintiff discovered John Doe 31's publication of the Content on or around June 18, 2024.

    ff. John Doe 32 posted the Content without Plaintiff's consent on the website ip1.imporn.to on an unspecified and unknown date. Plaintiff discovered John Doe 32's publication of the Content on or around June 18, 2024.

25. The Content has, at times, appeared in Internet search results for Plaintiff's name and has been located through use of facial recognition software, the development of which is advancing rapidly.

26. The prominent display and proliferation of the Content has caused a significant disruption to Plaintiff's daily life. Plaintiff lives in constant fear and distress that family, friends, neighbors, colleagues, or any other individuals she encounters on a daily basis will either have seen, or will soon discover, the Content. Plaintiff also has legitimate fears that individuals accessing the Content online will give credence to the false implications created

thereby and utilize the accompanying Personal Information to contact her and engage in unsolicited and unwanted communications, harassment, and other conduct, as she has already experienced on multiple occasions.

## IV. COUNT I: NONCONSENSUAL DISCLOSURE OF INTIMATE IMAGES PURSUANT TO 15 U.S.C § 6851

27. Plaintiff realleges and reavers the Preceding Paragraphs as if fully rewritten and restated herein.

28. The Content depicts Plaintiff in various states of undress, exposing intimate parts of her body.

29. Plaintiff intended the Content to be shared only with her exclusive romantic partner at the time and thereafter maintained in strict confidence.

30. The Content has been acquired by the Doe Defendants and is being distributed via the Worldwide Web as it published on the Internet. The Content therefore has been distributed using means of interstate and international commerce.

31. The Doe Defendants intentionally distributed the Content without Plaintiff's consent, permission or agreement.

32. The Doe Defendants' disclosure of the intimate visual material and accompanying information reveals Plaintiff's identity.

33. At the time of each publication, the Doe Defendants knew, or recklessly disregarded, that Plaintiff had a reasonable expectation that the Content was private and had not consented to the disclosure of the Content.

34. The Content is not a matter of public concern.

35. The Content was never intended to be publicized.

36. Plaintiff has suffered substantial harm as alleged herein, including general and special damages, as a result of the dissemination of her private material, in an amount to be proven at trial. The Doe Defendants' conduct was a foreseeable and substantial factor in causing Plaintiff's harm.

### V. COUNT II: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

37. Plaintiff realleges and reavers the Preceding Paragraphs as if fully rewritten and restated herein.

38. The Doe Defendants have maliciously published the Content on the Internet for the purpose of intimidating and humiliating Plaintiff and otherwise destroying Plaintiff's reputation and standing in her community.

39. The Doe Defendants' actions were taken with the intent to cause, or in reckless disregard of a substantial probability of causing, severe emotional distress to Plaintiff and Plaintiff has suffered severe emotional distress as a result of the actions complained of herein.

40. The Doe Defendants' publication and distribution of Plaintiff's private and intimate Content was so outrageous and so extreme as to exceed all reasonable bounds that are usually tolerated in a civilized community.

41. Highly foreseeable is the causal connection between intentionally or recklessly disregarding a woman's right to consent to the presence of private intimate Content on the Internet and the resulting injury to Plaintiff of severe emotional distress.

42. As a direct and proximate result of the Doe Defendants' intentional infliction of emotional distress, Plaintiff has suffered physical and mental harm and other damages as alleged herein with the exact amount to be proven at trial.

## VI.  COUNT III: INVASION OF PRIVACY –

## PUBLIC DISCLOSURE OF PRIVATE FACTS

43. Plaintiff realleges and reavers the Preceding Paragraphs as if fully rewritten and restated herein.

44. The Doe Defendants published the Content and personal information about Plaintiff on the Internet.

45. As a result of the Doe Defendants' conduct, the Content and Plaintiff's personal identifying information are publicly available on the Internet.

46. The Content was always intended by Plaintiff to remain private.

47. A reasonable person in Plaintiff's position would consider publication of the Content and personal information highly offensive and objectionable.

48. The Doe Defendants knew or acted with reckless disregard of the fact that a reasonable person in Plaintiff's position would consider publication of the Content, accompanied by Plaintiff's personal information, to be highly offensive.

49. The Content and Plaintiff's personal information are not of legitimate public concern.

50. Plaintiff has suffered substantial harm as alleged herein, including general and special damages, as a result of the publicity of the Content and Personal Information, in an amount to be proven at trial. Defendant's conduct was a foreseeable and substantial factor in causing Plaintiff's harm.

## VII.  COUNT IV: DEFAMATION PER SE

51. Plaintiff realleges and reavers the Preceding Paragraphs as if fully rewritten and restated herein.

52. On or around April 3, 2023, Defendant John Doe 4 posted Plaintiff's private intimate content to Bağcılar Escort Bayan, a Turkish website advertising individuals who engage in sex for hire.

53. The April 3, 2023 post is accompanied by the following text (translated to English) which does not correctly identify Plaintiff by her real name:

    a. "I am excited to make you happy with such feelings because I have created a fiery Bağcılar Russian Escort personality that always warms the environment and makes you experience the pleasure that will always heat up the environment in a rabid way. When we come together, we can live long nightly relationships in order to convey all the lust feelings to each other beautifully. Because in short-term relationships, it may not be possible to fully experience and fully reveal some things. I am giving you some tips in particular to live these feelings and beauties with you. I am experiencing a togetherness where we can create quality living standards beautifully."

54. On or around August 16, 2023, Defendant John Doe 15 posted Plaintiff's photograph to Halkali Escrot Bayan, a website advertising individuals who engage in sex for hire.

55. The August 16, 2023 post is accompanied by the following text (translated to English) which does not correctly identify Plaintiff by her real name:

    a. "The calm and colorful streets of Halkalı are a place where various people meet. In this place, as a Halkalı Usluplu Escort lady like me, I always know that communication is of great importance. Here is a story that tells how I communicate effectively with people and how I address them... Communication is one of the strongest bonds between people. In this lively atmosphere of Halkalı, I encounter

15

people, each with their own story and desires. Understanding them, addressing them correctly and creating a reliable bond between them is one of the most important points for me. As Halkalı Lady Escort , one evening, we made an appointment at a luxurious restaurant to meet a new customer I met. We sat at the table and started chatting. Listening to her story helped me understand what she wanted. One of the first steps was to really understand the person in front of me and respond to her needs accordingly. During the conversation, focusing my attention on her eyes and gestures was a sign of sincerity and interest. While listening to her story, I tried to show that I was in harmony with her with my gestures and looks. This allowed our communication to progress on a more meaningful and deeper level. I made sure to use gentle and respectful language throughout the conversation. While clearly conveying what I wanted to express, it was also important to make the other person feel comfortable. Respect and understanding in mutual communication were the foundation of the relationship. In the middle of our conversation, I discovered my client's interests and hobbies. Finding common ground with her and shaping our sharing on this basis deepened our communication even more. Talking about the topics she was interested in helped us establish a bond between us. When the dinner at the restaurant was over, we went to the hotel lobby. While I was with her, I continued to maintain intimacy with my gestures and body language. We both felt comfortable and our communication was quite fluent. When we got to the hotel, I felt the bond brought about by our communication had become even stronger. I saw that communicating openly with her, understanding her desires and boundaries helped us enjoy the moment better. Knowing how to approach her

helped us lay the foundation for trust and comfort. As the night progressed, our communication was nourished not only by words but also by body language. Expressing my interest and desire for her with my gestures made the night even more special. While we both enjoyed the moment, we experienced the power and importance of communication once again. At the end of the night, I thought about the beauty of our communication with my client. Speaking sincerely to her, responding to her needs appropriately and establishing trust between us made us have a successful experience. Halkalı EscortAs , I always wanted to emphasize the power of communication and establish real connections with people. As an Escort Halkalı , I always understood how valuable communication is. Speaking sincerely to people, understanding them and strengthening the bond between us was the key to having a successful experience. My success in communication allows my clients to feel comfortable and enjoy the moment to the fullest"

56. Plaintiff's photographs on both Bağcılar Escort Bayan and Halkali Escort Bayan with accompanying text falsely asserting that Plaintiff engages in sex for hire injuriously affects Plaintiff's reputation, degrades her and otherwise exposes her to public hatred and contempt.

57. Contrary to the false assertion and innuendos, Plaintiff is not currently and has never engaged in sex for hire or any other form of sex work.

58. The false claim that Plaintiff engages in sex for hire constitutes libel per se because the claim, on its face, falsely accuses Plaintiff of a serious crime and sexual misconduct and promiscuity.

59. By publishing Plaintiff's Content and photos on Bağcılar Escort Bayan and Halkali Escort Bayan, the Doe Defendants published false and defamatory statements of and concerning Plaintiff which constitute defamation.

60. Defendant published the false statements without privilege or authorization to do so.

61. The defamatory statements on Bağcılar Escort Bayan and Halkali Escort Bayan were read by third parties on the websites and otherwise communicated to third parties.

62. The assertions published by Defendant falsely and unjustifiably impugn Plaintiff's personal and professional reputation and injuriously affect Plaintiff's standing in her trade, profession and in her community at large.

63. The intended implications of the false statements published by Defendant are false, impugn Plaintiff's personal and professional reputation, and injuriously affect her standing in her trade and profession.

64. Defendant published the false statements with actual malice, knowing that the statements contained therein were false, or acting with reckless disregard as to the truth or falsity of these statements.

65. Defendant published the false statements with express malice, in bad faith and motivated by ill-will, spite and the spirit of revenge.

66. Defendant's false statements are intended to subject, and in fact have subjected, Plaintiff to ridicule, contempt, hatred, and scorn.

67. Defendant's false statements are intended to cause, and in fact have caused, harm to Plaintiff's personal and professional reputation, and are intended to deter others from transacting business or otherwise associating with Plaintiff.

68. As a direct and proximate result of Defendant's actions complained of herein, Plaintiff has suffered and sustained irreparable harm, actual, consequential, and presumed damages, injury to reputation, emotional distress, mental anguish, mitigation expenses, and other harm to her interests.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Doe, demands judgment against Defendants, as follows:

A preliminary and permanent injunction pursuant to 15 U.S.C. §6851(b)(3)(ii);

a) preliminary and permanent injunction requiring the Doe Defendants to take all necessary measures to remove all reproductions of the Content and permanently delete all intimate photographs, videos, and other reproductions of Plaintiff within the possession, custody, or control of the Doe Defendants;

b) a preliminary and permanent injunction requiring the Doe Defendants to remove all intimate details of Plaintiff's life that the Doe Defendants published on the Internet or elsewhere;

c) Actual and/or compensatory damages, and punitive damages where available, in an amount exceeding $150,000.00 with the exact amount to be proven at trial;

d) Future and prospective damages in an amounts exceeding $150,000.00 with the exact amount to be proven at trial;

e) Costs of this action and reasonable attorney fees pursuant to 15 U.S.C. §6851(b)(3)(i);

f)  For any and all other relief to which the Court is empowered to grant.

Dated: February 10, 2025            Respectfully submitted,

/s/ *Stephen M. Prignano*
Stephen M. Prignano (3649)
**MCINTYRE TATE LLP**
50 Park Row West Suite 109
Providence, RI 02903
(401) 351-7700
SPrignano@McIntyreTate.com

Daniel A. Powell, Esquire (*pro hac vice* forthcoming)
Sarah Kolick, Esquire (*pro hac vice* forthcoming)
**MINC LLC**
200 Park Avenue, Suite 200
Orange Village, OH 44122
(216) 373-7706
DPowell@minclaw.com
SKolick@minclaw.com

*Counsel for Plaintiff*